316 So.2d 27 (1975)
John Remy BUSENLENER et ux.
v.
Daniel J. PECK.
No. 10293.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
*28 Donald S. Zuber, Baton Rouge, for appellant.
J. Arthur Smith, III, Baton Rouge, for appellees.
Before LANDRY, BLANCHE and YELVERTON, JJ.
BLANCHE, Judge.
The defendant-appellant, Daniel J. Peck, appeals an adverse judgment of the Nineteenth Judicial District Court, awarding the plaintiff-appellees, John Remy Busenlener, and his wife, Suetta Riley Busenlener, reduction of the purchase price of a house, damages and attorney's fees in the sum of $932.55 plus all costs.
In June, 1972, the defendant listed for sale with Eleanor Dent, Realtor, a duplex house at 2010 Terrace in the City of Baton Rouge. Following the listing, he was advised by Mrs. Dent and a tenant in the house that the roof leaked and was causing some damage to the interior. As the defendant at that time was living in Breaux Bridge, Louisiana, he enlisted the help of his attorney, Taylor Rooks, to have a new roof installed on the house.
Subsequently, in January, 1973, Mrs. Dent showed the house to the Busenleners. They noted some water stains in the living room, dining room, and back bedroom, and inquired of Mrs. Dent as to whether or not the roof leaked. They were told by her that the roof had leaked at one time, but that the owner authorized her to represent to prospective purchasers that a new roof had been installed.
Thereafter, the Busenleners decided to purchase the house and the sale of the *29 property was executed on February 7, 1973.
Mr. Busenlener painted the existent water stains so that they were no longer noticeable. Thereafter, in August, a new small waterspot appeared on the ceiling of the back bedroom, and in January, 1974, during a heavy downpour, there developed a substantial leak in the roof above the back bedroom causing the damages complained of herein.
As a result of this experience, the Busenleners had Lucius B. Odom, a roofing contractor and appraiser, to inspect the roof. His inspection revealed that the shingles were new, but the metal valleys were defective, and in his opinion, the valleys were the cause of the leak. His opinion was that the valleys were the original valleys which were installed on the house and that over a period of years, holes had developed through which the water would pour into the attic. He also noted that nails were improperly positioned on the gutter so as to allow water to seep around them into the attic. He informed the Busenleners that the holes in the valleys had been patched from time to time, but that even the best patching method would last only one year and thereafter the expansion and contraction of the metal due to heat and cold would cause it to leak again. Therefore, his solution was to install new valleys.
On February 6, 1974, the plaintiffs brought suit under the Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401 through 1418. They sought a reduction of $2,500 in the purchase price, being the amount required to put the roof into good condition, $750 for inconvenience, annoyance and humiliation, and $1,000 as reasonable attorney's fees, as provided under the law.
The trial judge obviously disregarded the fact that suit was brought under the Unfair Trade Practices and Consumer Protection Law and considered the suit as one for the reduction of the purchase price as a vice of the thing sold, under LSA-C.C. Arts. 2520 through 2548. In effect, he reduced the purchase price by awarding the plaintiffs the sum of $374 for repair to the roof and $258.55 damages for repapering the bedroom where the leakage occurred. He awarded attorney's fees of $300 under LSA-C.C. Code Art. 2545.[1] He cast the defendant with the cost of the proceedings and established the expert witness fee of Mr. Lucius Odom at $50.
The defendant's reconventional demand for damages to his reputation as a real estate owner, inconvenience, anguish and harassment, and reasonable attorney's fees, as provided for in R.S. 51:1409, was dismissed. The defendant has not appealed that portion of the judgment.
On appeal of the judgment awarding the plaintiffs a reduction in price, damages and attorney's fees, the defendant asserts three specifications of error:
(1) The trial court erred in granting a reduction of the purchase price in veiw of the fact that the defects were apparent at the time of sale.
(2) It was improper to award damages to repair the bedroom.
(3) The plaintiffs were not entitled to attorney's fees.
The plaintiffs answered the appeal, citing that the trial judge erred by not awarding attorney's fees in the sum of $1,300. Neither the plaintiffs nor the defendant contest the fact that recovery was granted under the Louisiana Civil Code rather than the Unfair Trade Practices and Consumer Protection Law.
*30 The law with regard to the subject of the instant suit was set forth in Cook v. Highland Park Construction Company, 168 So.2d 825 (La.App.2nd Cir. 1964), quoting from Pursell v. Kelly, 139 So.2d 12 (La.App.4th Cir. 1962), as follows:
"`The law of this state places on the vendor the obligation of warranting the thing against hidden defects or its redhibitory vices. LSA-C.C. Arts. 2475, 2476. Hidden defects are those which could not be discovered by simple inspection. LSA-C.C. Art. 2521. Under LSA-C.C. Art. 2520 redhibition is defined to be the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolutely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice. An action for reduction of the price is included in the redhibitory action and the buyer may limit his demand to a reduction, or the judge may decree merely a reduction of the price. LSA-C.C. Arts. 2541, 2542, 2543.
"`The redhibitory action and the action quanti minoris are applicable as well to sales of real property as to sales of movables. Under our jurisprudence the cost of repairs necessary to restore the property to the condition it should have been in is the proper measure for determining a reduction of the purchase price of real property. * * *' [139 So.2d 12, 14]" (Cook v. Highland Park Construction Company, 168 So.2d at 826).
In the instant case, the trial judge was "of the belief that there were substantial defects in the roof which caused the leaks and damage complained of and that the defects were not readily apparent to the prospective purchasers and, accordingly, the plaintiffs are entitled to reduction in the purchase price," obviously relying upon LSA-C.C. Art. 2541.[2]
His conclusion that the defects were not apparent was compelled by the testimony of the plaintiffs' roofing appraiser and contractor, Mr. Odom, and the affidavit of Gilbert Griffith, also a roofing contractor. Griffith's affidavit was submitted by stipulation of both counsel.
Mr. Odom testified that the ordinary house buyer could not have discovered the defects in the valleys which caused the leakage. Mr. Griffith, in his deposition, stated that the defects would not be apparent to a person with no roofing experience.
LSA-C.C. Art. 2521 establishes that "apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices." It is obvious from the evidence that the vices complained of could not be discovered by a "simple inspection" and were, therefore, not apparent. As the defects were existent at the time of the sale and were also not apparent, the plaintiffs are entitled to reduction in the purchase price in an amount equal to the cost of repairs necessary to restore the house to the condition it was warranted to be in at the time of purchase, Wilfamco, Inc. v. Interstate Electric Company, 221 La. 142, 58 So.2d 833 (1952); Cook, supra.
A house with a defective roof undoubtedly fails to serve the purposes for which it was acquired, Russell v. Bartlett, 139 So.2d 770 (La.App.4th Cir. 1961).
For the foregoing reasons, the plaintiffs are entitled to recover $374 for repairing the roof and $258.55 for repairing the bedroom, as both awards are required in order that the house be returned to the condition it should have been at the time of the sale.
*31 However, the defendant contends that the award of $258.55 to repair the bedroom is improper. He cites Domingue v. Whirlpool Corp., 303 So.2d 813 (La.App.3rd Cir. 1974), for the proposition that the repairs to the ceiling and walls of the bedroom caused by the leakage are not an expense covered by LSA-C.C. Art. 2531[3] and therefore are not recoverable.
Domingue declared that damages to the ceiling of a house which resulted from a defective air conditioning unit were not collectible under Article 2531. The court reasoned that the suit was for the rescission of the sale of the air conditioner and contrary to the requirements of Article 2531, the damages to the ceiling were not an expense occasioned by the sale nor were they an expense incurred in the preservation of the thing (the air conditioner). Therefore, it held Article 2531 to be inapplicable.
Domingue is easily distinguishable. In the instant case, the entire house was the object of this sale, not just a component part thereof as in Domingue. The plaintiffs bought not only a component part of the house, that is, the roof; they bought the entire house, which included said roof and also the damaged bedroom. The defendant, as seller, was bound to warrant that the entire house was free of defects. As it turned out, the house had defective valleys and a damaged bedroom as a direct result thereof.
Under Article 2531, the seller is bound to repair the vices in the thing sold. The house sold by the defendant herein was defective in that the valleys leaked and as a result thereof, the ceiling and walls in one bedroom were also defective. The plaintiffs are entitled to be returned, as near as possible, to status quo at the time of the sale, Davis v. Bryan Chevrolet, Inc., 148 So.2d 800 (La.App.4th Cir. 1963), certiorari denied 244 La. 140, 150 So.2d 766 (1963).
Therefore, in addition to the $374 required to repair the roof, the plaintiffs are entitled to an additional $258.55 to restore the damaged bedroom to the condition it should have been at the time of the sale. The fact that the entire house was the object of the instant sale compels this result. The defendant's second specification of error is therefore without merit.
The defendant further argues that since the plaintiffs were put on notice of prior leakage, they were obligated to investigate further. However, the defendant testified that he had authorized his realtor to represent to the plaintiffs that there was a new roof on the house and the evidence is clear that she, in fact, did so. Additionally, the defendant assured Mr. Busenlener at the time of the passing of sale that there was, in fact a new roof on the house. Therefore, even assuming the plaintiffs were put on notice concerning prior leakage, the assurance of the owner and realtor that a new roof had been installed relieved them of the requirement to investigate further.
The defendant's third specification of error that attorney's fees were improperly awarded was met with an answer by the plaintiffs seeking an increase in said award from $300 to $1,300. The trial judge awarded attorney's fees based upon the assumption that the knowledge of the roofer that the defective valleys were not replaced was imputed to the defendant. Therefore, knowledge of the defect and failure to disclose it to the plaintiffs made the defendant liable for attorney's fees under Article 2545.
*32 Under the facts, however, it is clear that the roofer in this case was an independent contractor. Under the holding of Daves v. Hamilton, 194 So.2d 361 (La.App.1st Cir. 1966), the owner is not liable for said roofer's negligence in not replacing the valleys as a prudent roofer certainly would have done.
Additionally, there was no relationship existing between the defendant and his roofer which would impute the roofer's knowledge to him, Phoenix Insurance Company v. Bennett, 176 So.2d 682 (La.App.4th Cir. 1965). The fact that the defendant had knowledge of the defect prior to the sale did not cause him to be liable for attorney's fees under Article 2545. His actions taken prior to the sale to remedy the defect were reasonable and he was in good faith in believing that the defect was cured.
Admittedly, he had knowledge of the defect prior to the sale; but his reasonable attempt to remedy said defect, coupled with the fact that the roofer's knowledge of the remaining defect was not imputed to him, prevents us from awarding attorney's fees to the plaintiffs. The defendant's reasonable actions to remedy the defect in effect relieved him of his duty to disclose the defect to the plaintiffs.
As noted above, his reasonableness and good faith does not relieve the defendant from a reduction in the price of the thing sold; however, it does preclude a recovery of attorney's fees and damages under Articles 2545 and 2547.[4]
For the above and foregoing reasons, the judgment of the trial court awarding a reduction in the purchase price of the house located at 2010 Terrace, Baton Rouge, Louisiana, in the amount of $374 for repairing the roof and $258.55 for repairing the bedroom, in favor of the plaintiffs, John Remy Busenlener and his wife, Suetta Riley Busenlener, and against the defendant, Daniel J. Peck, together with all costs and expert witness fees, is hereby affirmed.
The judgment granting $300 in attorney's fees to the plaintiffs is hereby reversed and set aside. All costs of these proceedings are to be paid by appellant.
Affirmed in part, reversed in part, and rendered.
NOTES
[1] Article 2545 of LSA-C.C. provides:

"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
[2] LSA-C.C. Art. 2541 provides:

"Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."
[3] LSA-C.C. Art. 2531 provides:

"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it."
[4] LSA-C.C. Art. 2547 provides:

"A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: Of Conventional Obligations.
"It may, according to the circumstances, give rise to the redhibition, or to a reduction of price, and to damages, including reasonable attorneys' fees, in favor of the buyer."